BOSTON INSURANCE CO.

      VS                                    No. 7891.

HOWARD N. L.OODY,
      Appellant.

December 20th, 1920.

BOSTON INSURANCE CO.

VS                                              No.7891.

HOWARD F. MOODY,
        Appellant.

Appeal from Civil District Court, Hon. Fred D.
King, Judge.

CHARLES F. CLAIBORNE, JUDGE.

This is a damage suit resulting from the collision of
two automobiles.

The plaintiff avers that on March 6th, 1917 Fred S.Weiss
and Mrs. Friend, his sister, were owners of a seven passenger
Cadillac automobile of the cost price of $2250 in first class con-
dition and as good as new; that the said Weiss and his sister
had insured their auto with plaintiff company; that on said date,
said auto was run into by an auto belonging to the defendant,
H. N. Moody, and driven by him, and was damaged to an amount of
$1499.70; to that petitioner was obliged to pay, and did pay,
said amount to Weiss and to his sister, and was by them subrogated
to all their rights against the said Moody. That the collision
happened in the manner following: Weiss' auto was driven by a
careful chauffeur between 9 and 10 o'clock in the morning along
the down town side of Louisiana Avenue, running slowly from the
River towards the lake, when, on crossing the river side of St.
Charles Avenue, it was run into by the auto of defendant driven
by himself; that defendant was driving his auto down St.Charles
Avenue towards Canal Street at an excessive rate of speed; that
plaintiff's auto was hurled against an electric light pole on
the neutral ground at the corner of Louisiana and St. Charles
Avenues; that the collision was due solely to the fault of the
defendant, while Weiss' chauffeur was not guilty of any negli-
gence, and did every thing in his power to avert the accident.

Defendant admitted the collision, but denied that it
occurred through any fault of his, and alleged on the contrary
that it was due entirely to the negligence of Weiss' chauffeur
in that he attempted to force his way across the street in
front of defendant's auto at a reckless rate of speed; that he

212

did all in his power to avoid a collision by applying the brakes
on his auto; he admits that Weiss' auto struck an electric light
pole on the neutral ground as alleged; but that this was the re-
sult of the excessive rate of speed at which the Weiss car was
travelling, and he denies that the car was hurled against the
pole as alleged; he further alleges that his own auto was damaged
to the extent of $395 for the recovery of which he reserves his
rights against Weiss.

There was judgment for plaintiff, and defendant has
appealed.

There were only five witnesses examined regarding the
accident. They were: for the plaintiff, Charles Thornton, a by-
stander, and Arthur T. Rudkin, Weiss' chauffeur;  for the defen-
dant, H. N. Moody, and Smith and Jones, both his employees. *And*
*occupants of the car with him.*
Thornton testifies:  He lives in Lake Charles; is a
chauffeur since 1902; saw the accident; was standing on the down
town river corner of Louisiana Avenue and St. Charles right up
against the fence; he first saw Weiss' car going out Louisiana
Avenue; it had a little silk flag stacked up in front worn to a
frazzle; then he saw him coming back; just then he saw defendant's
car coming, along in front of Dr. Newman's house, on the river
side corner of St. Charles and Delachaise;

"he was coming in at an awful speed and his front
wheels were just shaking"
and he was blowing his horn; he heard the noise of the machine
before he heard the horns; when Weiss' *car* rolled up to the corner
and almost came to a stop before he attempted to cross; he start-
ed to cross, and

"this fellow looked like he hugged the car track, and
he crushed into and drived him into the post, a tele-
graph post, and throwed the chauffeur out; x x x "
he was right over there after they got them out and picked the
men up, and Moody said he thought he was putting the brake on,
and he was accelerating; the Moody car did not slow up before the
accident; it must have been going at the rate of 35 to 40 miles
an hour; the Weiss car crossed St. Charles at a rate of 8 or 10
miles an hour; the accident occurred on the wood side of St.

Charles Avenue; he drove the car right into the telephone post which kept it from turning over; the Moody car struck the tail end of the Weiss car; the two hind wheels on the left hand side; there was room behind the Weiss car, for the Moody car to pass, room for two cars; there was nothing to prevent the Moody car from seeing the Weiss car; he was standing on the sidewalk facing the wood, waiting for "Mr. Eddy Greever"; facing uptown wood corner; he heard the Moody car before he heard the horns; the Moody car began to sound its horn when it got near Solari's at the pressing shop; the Moody car was hugging the neutral gound; Weiss' car was a left hand drive; the chauffeur was on the side on which Moody was coming; Weiss' chauffeur is careful; he has known him for five years; he

"never knew him to bend a fender in his life". Weiss chauffeur is white; and thirty-five years old; witness is colored; there is room on St. Charles Avenue for three cars abreast - probably four; under City Ordinances cars running on streets north and south have the right of way over cars running east and west; a Cadillac car is a heavy car; defendant's car, a Dodge, is a light car; Weiss' chauffeur was knocked out on the wood side of the post; the accident happened at about nine o'clock in the morning; there was not much traffic; there was nothing to prevent the Weiss chauffeur from seeing the Moody high rate of speed; when the Moody car reached Solari, it crossed to the river side of the street and then came down across the Louisiana Avenue tracks on a 45 degree angle towards the neutral ground; that is how he hit the Weiss car; there was no reason to hit the Weiss car; it was just by reckless driving.

Arthur T. Rudkin testifies that he was Weiss' chauffeur; had been for ten years; before that had been five years chauffeur for Mrs. Isidore Newman; never had any accident before; his car was in first class condition, practically a new car; when he approached St. Charles Avenue he looked up and saw nothing; when he got to the centre of the street he noticed Moody's car coming down very fast; he then changed from second to third speed, that is, to a higher speed to avoid being struck by the car; but his accelerator did not take; the front wheel of his car

was already on the track to make the turn uptown when he was struck on his rear wheels about three feet from the post; he was jammed against the post; the post was broken in half; all that held it were the wires; the lights of the Moody machine were stamped on his car, and also the Dodge emblem; the blow knocked him completely out of the car; the whole rear car was practically knocked out, the rear wheel and "transmission"; when he got to the corner of St. Charles Avenue, he saw the Moody car almost behind Solari's wagons coming at a terrific rate of speed; as he accelerated his speed, instead of the car speeding up, it lagged; it had a defect; had the car speeded up, Moody's car would not have caught him; he would have been out of his way.

H. N. Moody, the defendant, says: He is a contracting engineer; he was driving his car himself on the morning of the accident at a speed of 18 and 20 miles an hour; on reaching Solari's he encountered many wagons backed up against the curb; he looked over the top of the wagons and not seeing any car, he slowed down and approached Louisiana Avenue and when he reached about the middle of the lower rails of the car tracks he saw the Weiss car coming from behind two covered wagons trailing each other coming from the River going towards the woods;

"raalizing that the street was wet I attempted to put my brakes on, but realizing it was futile I immediately applied my accelerator to try and get by the Weiss car as there did not seem to be much chance of him stopping at the rate of speed at which he was traveling; he looked to me to be travelling in about the same speed as I was";

he was then twenty-seven feet from the place where the accident happened; the Weiss car was also at the same distance; he took the measurement of all those distances within a half an hour of the accident; the wagons were going in the same direction along Louisiana Avenue as the Weiss car; they were upon his left next to the neutral ground, and he passed them on the lower side; Louisiana Avenue had been sprinkled; we both accelerated and collided about the same time; in his car with him were Mr. Copp,

215

Mr. Smith, and Mr. Jones; they all catapulted or were shot out of their cars, Rudkin also, Mr. Jones through the top, and others out at the side, and all were injured; one was knocked senseless, and another badly hurt; he first put on the brakes, and then accelerated; the roadway of both Louisiana and St. Charles Avenues is about twenty-four feet wide; he hit the Weiss car about the middle of the road-way; he hit the Weiss car; when the two cars collided, they were going at a greater speed than twenty miles an hour because they both accelerated; when the two cars became visible to each other, the Weiss car could have turned down St. Charles Avenue if he had been going slowly; but at the rate of speed at which he was going he had nothing to do but try to get by; he could have stopped and slowed down before coming to St. Charles Avenue.

J. C. Smith, one of the occupants of the car, says it was going at about twenty miles an hour; he first saw the Weiss car when he was crossing the Louisiana Avenue car track about thirty-five or forty feet away; there were wagons on Louisiana Avenue; did not hear any horn from either automobile; the impact of the car assisted the post to break.

J. C. Jones testifies that Moody was driving at about twenty miles an hour; he works for Moody, so does Smith; Moody blew his horn before he got to the car-track; he went through the top of the car to the pavement.

Ordinance 1392 Commission Council Series adopted April 15, 1914 controls the traffic in the City of New Orleans.

Section 2 (a) provides:

"A vehicle, except when passing a vehicle ahead, shall keep as near the right hand curb as possible".

Section 4 (b):

"Subject to Section 2 of this ordinance, everything being equal, all vehicles and street cars going in a northerly or southerly direction shall have the right of way over all vehicles and street cars going in an easterly or westerly direction".

Section 5 (b):

"No vehicle shall cross any street or avenue running

216

north and south or make any turn at a speed rate exceeding one-half its legal speed limit".

Section 14 (a):

"The terms North and South" as used in this ordinance are used to indicate directions parallel to the Mississippi River, North being in the direction of the St.Bernard Parish line and South being in the direction of Jefferson Parish line".

(b):

"The terms East and West as used in this ordinance are used to indicate directions at right angles with the Mississippi River, East being in the direction towards the Mississippi River, and West being in the direction of the Lake".

Ordinance 3027 adopted January 5th, 1916  Section 1: "That the speed of automobiles and motorcycles in the City of New Orleans in the district bounded by Howard Avenue, St.Louis Street, the River and Basin Street shall be ten miles per hour, and on other streets and roads of the City twenty miles per hour".

Our conclusions from the testimony quoted above and from other parts which it would be too long to reproduce are as follows:

Weiss' car was running along the lower side of Louisiana Avenue, which has a neutral ground in the centre; it was running in the direction of the lake, or from East to West; when it got near St.Charles Avenue, it passed a wagon covered trailing another wagon; instead of passing the wagons on the left, as it should have done, underthe ordinance, it passed them on the right, thus placing the wagons between it and the neutral ground; in that position, it could not see the machines coming down the avenue, nor could they see it; a result which it was evidently the object of the ordinance to prevent. It thus happened that Moody did not see Weiss' car, nor did the chauffeur in Weiss' car see Moody; they saw each other only after the Weiss car emerged from behind the wagons on Louisiana Avenue and rolled into the middle of St.Charles Avenue; both then saw the danger

217

of the situation; it was too late to check up, and speed was
their only salvation; Weiss attempted to accelerate, to get out
of Moody's way, but his machine was out of order, and would not
respond; Moody accelerated also, with the hope of passing ahead
of Weiss; in this attempt he instinctively swerved his car to
the left, and instead of getting out of the way of Weiss' who
was also forging ahead; he was too late and ran into him with
much violence, and jammed him against the post. But in all this,
Weiss' chauffeur was at fault. He was guilty of two violations
of the City Ordinances governing the running of autos.

1o When he passed the two wagons going in the same direction
he was, he should, according to the ordinance, have passed them
on their left. Had he done so, he would have been in a better
position to see Moody, and Moody would certainly have seen him
earlier, and the accident would not have happened. Plaintiff's
witnesses do not deny the presence of these two wagons.

2o Moody going down St.Charles Avenue was travelling, accord-
ing to City Ordinances, in a northerly direction. He had the
right of way, He was only bound to use ordinary care in avoiding
cars crossing his path from either side, as it was not expected
that any would do so. It was Weiss' duty, on the other hand, to
stop when he reached St. Charles Avenue, or at any rate to so
slacken his pace as to have his car under perfect control and
to look in order to avoid a collision with a car running down
St. Charles Avenue. This he did not do. He did not even hear the
car which according to Thornton was blowing its horn continuous-
ly. He says he checked up almost to a stop, and looked up the
street and saw no car coming. His statement does not bring con-
viction. If he had checked up, he would have had his car under
control; and if he had looked up he could not have helped see-
ing the Moody car which must have been very close to him, since
it caught up with him before he had time to cross the street.
The street was only twenty-four feet wide, and if he was going
at a speed of ten miles, as Thornton says, and Moody at twenty
miles, Moody could not have been more than forty-eight feet from
him. On a bright morning of the month of March, between ten
and eleven, it would have been easy to see the car coming at

218

twice that distance, and perhaps four times. Thornton, who was standing up against the fence, at least nine feet from the street curbing, saw and heard it nearly three hundred feet up the street. If he did not see the car it was because he did not use proper diligence to see it. When he says he saw it, it was too late to stop; he was in the path of the oncoming car of Moody; all he could do was to speed up; his machinery would not respond, and he remained in Moody's road; Moody dashed into him and damaged him; but we think that he brought his troubles upon himself for which he cannot hold the defendant liable. *139 La*

*539*

It is therefore ordered that the judgment be reversed and that there be judgment in favor of defendant rejecting plaintiff's demand at his cost.

Judgment reversed.

December 20th, 1920.